**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━

RIDLEY G.,

                                        Plaintiff,

              v.

                                                    No. 1:20-CV-773
COMMISSIONER OF SOCIAL SECURITY,                    (CFH)

                                        Defendant.
━━━━━━━━━━━━━━━━━━━━━━━━━━


**APPEARANCES:**                    **OF COUNSEL:**

Olinsky Law Group                   HOWARD D. OLINSKY, ESQ
250 South Clinton Street, Suite 210
Syracuse, New York, 13202
Attorney for plaintiff

Social Security Administration      PAUL NITZE, ESQ.
J.F.K. Federal Building
15 New Sudbury Street, Room 625
Boston, Massachusetts 02203
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

        Plaintiff Ridley G.[2] ("plaintiff") brings this action pursuant to 43 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("the

Commissioner") denying her application for disability insurance benefits.  See Dkt. No. 1

───────────────

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

("Compl.").  Plaintiff moves for reversal and remand for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings.  <u>See</u> Dkt. Nos. 13, 20.  For the following reasons, the Commissioner's determination is affirmed.

# I. Background

Plaintiff received supplemental security income ("SSI") benefits based on a finding of disability as a child.  <u>See</u> T. at 10.[3]  Upon turning 18 years old, the law required redetermination of her eligibility for these benefits.  <u>See</u> 20 C.F.R. 416.987(a)(1)(i)-(iii).  On September 29, 2016, plaintiff filed applications for Title II Disability Benefits and Title XVI Supplemental Security Income ("SSI") benefits.  <u>See</u> T. at 10.  The Social Security Administration denied both claims initially on September 22, 2017, and again upon reconsideration on August 15, 2018.  <u>See id.</u> at 73, 81, 109. Plaintiff requested a hearing, <u>see id.</u> at 143-46, and a hearing was held on March 22, 2019, in Albany, New York, before Administrative Law Judge ("ALJ") Mary Sparks.  <u>See id.</u> at 32-70.  On June 5, 2019, the ALJ issued an unfavorable decision.  <u>See id.</u> at 24. On May 7, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  <u>See id.</u> at 1.  Plaintiff commenced this action on July 10, 2020.  <u>See</u> Compl.

# II. Applicable Law

## A. Scope of Review

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 10.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

**B. Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has

an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

## III. The ALJ's Decision

After reviewing the record, the ALJ found that plaintiff attained age 18 on September 28, 2016, and was notified that she was found no longer disabled as of September 28, 2016, based on a redetermination of disability under the rules for adults who file new applications.  See T. at 13.  Applying the five-step disability sequential evaluation, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity at any time relevant to her redetermination.  See id.  At step two, the ALJ

found that plaintiff had the following severe impairments: "autism spectrum disorder, irritable bowel syndrome, generalized anxiety disorder, and unspecified depressive disorder." Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id. at 13-15.  Before reaching step four, the ALJ concluded that plaintiff retained the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: Simple repetitive jobs defined as those having no more than 1 to 2 tasks as defined by the US Department of Labor employment and training administration in the revised handbook for analyzing jobs and they would need to be low stress jobs defined as those having no more than occasional decision-making required and no more than occasional changes in the work setting and the individual could have no interaction with the public and no interaction with coworkers and could not perform tandem tasks with coworkers.

Id. at 15.  At step four, "[c]onsidering plaintiff's age, education, work experience, and [RFC]," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that plaintiff can perform."  Id. at 22.  Thus, the ALJ concluded that plaintiff's "disability ended on September 28, 2016, and [that she] has not become disabled against since that date[.]"  Id. at 23.

## IV. Relevant Record Evidence

### A. Medical Opinion Evidence

#### 1. Dr. Schaich

On August 1, 2017, Dr. David Schaich, Psy.D. ("Dr. Schaich"), a consultative examining psychologist, examined plaintiff and authored a medical source statement. See T. at 414-17.  As relevant, Dr. Schaich conducted a mental status examination and reported that plaintiff "was cooperative in the evaluation" and that "[h]er manner or relating, social skills, and overall presentation were fair due to autism." Id. at 415. Further, Dr. Schaich noted that plaintiff "appeared her age"; "was fairly groomed, [but] dressed somewhat bizarrely"; had normal posture and motor behavior; and exhibited "appropriate" eye contact." Id.  He indicated that plaintiff's "[s]peech was fluent and clear"; that she presented with "[a]dequate expressive and receptive language skills"; and that her thought process was "[c]oherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting." Id.  Moreover, Dr. Schaich observed that plaintiff "demonstrated a full range of affects" and "[a]ppropriate speech and thought content." Id.  In addition, Dr. Schaich noted plaintiff's mood as being "[a]nxious" but stated that "[s]he was oriented to person, place, and time." Id.

Dr. Schaich also indicated that plaintiff's "[a]ttention and concentration were intact" and that "[s]he could count, do simple calculations, and do serial 7s." T. at 416. He also observed that plaintiff's recent and remote memory skills were "[i]ntact" and noted that she was able to identify "3 out of 3 objects immediately, 2 out of 3 objects after a delay[, and] could correctly repeat 5 digits forward and 4 digits backward." Id. Dr. Schaich listed plaintiff's cognitive functioning at "[a]verage or below average" and noted that her "[g]eneral fund of information was somewhat limited." Id.  He noted plaintiff's insight as "[p]oor" and her judgment as "[f]air." Id.  Dr. Schaich listed plaintiff's diagnoses as "[a]utism spectrum disorder, mild"; "[s]pecific learning disorder"; "[m]ajor

depressive disorder, moderate, recurrent"; and "[g]eneralized anxiety disorder." Id. at 417.

Dr. Schaich also made numerous observations concerning plaintiff's mode of living. See T. at 416. Dr. Schaich noted that plaintiff "does not dress, bathe, and groom herself; she cannot cook or prepare food," but was able to clean and do laundry. Id. Plaintiff does not shop, manage money, drive, or take public transportation on her own. See id. Dr. Schaich observed that plaintiff "denied socializing" but indicated that her "family relationships [we]re good." Id.

Based on his diagnosis and evaluation, Dr. Schaich provided the following medical source statement:

> There is no evidence of limitation in ability to understand remember, and apply simple directions and instructions; no evidence of limitation in ability to understand remember, and apply complex directions and instructions; a mildly limited ability to use reason and judgment to make work-related decisions; a mildly limited ability to interact adequately with supervisors, co-workers, and the public; a mildly limited ability to sustain concentration and perform a task at a consistent pace; a mildly limited ability to sustain an ordinary routine and regular attendance at work; a mildly limited ability to regulate emotions, control behavior, and maintain well-being; no evidence of limitation in ability to be aware of normal hazards and take appropriate precautions. Difficulties are caused by autism.

T. at 416-17.

### 2. Dr. Ochoa

On March 12, 2018, Dr. Jennifer Ochoa, Psy.D ("Dr. Ochoa"), a consultative examining psychologist, examined plaintiff and authored a medical source statement. See T. at 449-53. As relevant, Dr. Ochoa conducted a mental status examination and

reported that plaintiff "was cooperative[,] but that her "[m]anner of relating was poor" in that "[s]he made no eye contact and responded in one-word answers." Id. at 450. Dr. Ochoa observed that plaintiff was "appropriately dressed[] and fairly groomed"; exhibited normal motor behavior"; and that her speech was "[f]luent" with a clear quality of voice and "adequate" "[e]xpressive and receptive language." Id. Further, Dr. Ochoa noted that plaintiff's thought process was "coherent and goal directed with no evidence of hallucinations, delusions, or paranoia in the evaluation setting[,]" but that her affect was "anxious" and that she "reported feeling nervous." Id. Dr. Ochoa observed that plaintiff was "[o]riented to person, place, and time." Id.

Dr. Ochoa also evaluated plaintiff's attention and concentration as being "intact," and noted that "[s]he was able to count, do simple calculations, and serial 7s without difficulty." T. at 451. Concerning her recent and remote memory skills, Dr. Ochoa observed that plaintiff was "able to recall 4 out of 4 words immediately and 4 out of 4 words a[fter a] five-minute delay" and six digits forward and five digits backward. Id. With respect to plaintiff's cognitive functioning, Dr. Ochoa indicated that plaintiff's "[i]ntellectual functioning [was] average" and that her "[g]eneral fund of information [was] appropriate to experience." Id. Moreover, Dr. Ochoa found plaintiff's insight and judgment to be "[f]air." Id. Concerning plaintiff's mode of living, Dr. Ochoa noted that plaintiff "often does not shower as she does not like water on her face" but that she "has no difficulties with dressing." Id. She also observed that plaintiff does not cook because "she is fearful of heat and knives" but is able to "use the microwave." Id. Dr. Ochoa noted that plaintiff "has difficulties with laundry but "has no difficulties with cleaning." Id. Dr. Ochoa observed that plaintiff does not shop, has difficulty managing money, does

9

not drive, and "would not be able to take public transportation due to anxiety." Id.  Dr.

Ochoa noted that plaintiff "described" her "family relationships" as "good."  Id.  Dr.

Ochoa listed plaintiff's diagnoses as "[a]utism spectrum disorder, level 1"; "[u]nspecified

depressive order"; and "[s]ocial anxiety."

Based on the foregoing, Dr. Ochoa provided the following medical source

statement:

> There is no evidence of limitation understanding,
> remembering, or applying simple directions and instructions.
> There are moderate limitations understanding, remembering,
> or applying complex directions and instructions.  There is no
> evidence of limitation using reasoning and judgment to make
> work-related decisions.  There are marked limitations
> interacting adequately with supervisors, co-workers, and the
> public.  There are moderate limitations sustaining
> concentration and performing a task at a consistent pace.
> There are marked limitations sustaining an ordinary routine
> and regular attendance at work.  There are moderate
> limitations regulating emotions, controlling behavior, and
> maintaining well-being.  There is no evidence of limitation in
> maintaining personal hygiene and appropriate attire, or in
> awareness of normal hazards and taking appropriate
> precautions.  Difficulties are caused by psychiatric issues.

T. at 451-52.

### 3. Dr. Cohen

On September 20, 2018, Dr. Jodie Cohen, Ph.D. ("Dr. Cohen") issued an Autism

Spectrum Disorder ("ASD") Evaluation Report for plaintiff based on her findings from

psychological testing performed on September 5, 2018.  See T. at 461.  Dr. Cohen

concluded that plaintiff's ASD and depression "significantly and negatively impact[] her

ability to function with independence at home and in the community."  Id.  Dr. Cohen

observed that plaintiff's "social presentation is typical and consistent with autism" in that

she was "limited in reciprocity in her interactions with others, does not maintain friendships, never mastered many of the foundational social skills needed for friendships, and does not use or read nonverbal cues very well."  Id.

Based on her evaluation, Dr. Cohen opined that plaintiff was in "need of supportive services through the Office for People with Developmental Disabilities (OPWDD)."  T. at 461.  Dr. Cohen noted that it was "imperative that [plaintiff] enter mental health treatment to address her depression."  Id.  Dr. Cohen also "encouraged [plaintiff] to pursue her GED."  Id.  Dr. Cohen indicated that plaintiff "requires supported employment with job coaching" and "encourage[d plaintiff] to take a job with the goal of developing foundational skills (i.e. conflict negotiation with a boss, timeliness, work ethic) that she can parlay into a desired job in the future."  Id. at 462.  Dr. Cohen further stated that he did "not believe that [plaintiff] shows the social skills needed to successfully hold a job without support and her depression currently prevents her from managing a 40-hour week job.  [Plaintiff] should receive financial support until such time as she is healthy and skilled enough to work full time independently."  Id.  Dr. Cohen recommended that plaintiff "participate in the intensive outpatient program at Four Winds hospital . . . [g]iven the severity, chronicity, and functional impact of [plaintiff's] depression[.]"  Id.  Moreover, Dr. Cohen "encouraged to pursue her GED in the near future" and stated that she thought plaintiff "would be a great candidate for college at some time in the near future."  Id.

## B. Other Record Evidence

### 1. Non-opinion Medical Evidence

11

The record also contains office visitation notes from plaintiff's primary care physician Dr. Saaket Gupta, M.D. ("Dr. Gupta") at Niskayuna Internal Medicine from October 2016 to May 2017.  See T. at 352-75.  Dr. Gupta's treatment notes indicate that plaintiff has a diagnoses of autism, and anxiety, and that she is treated with Prozac, "which helps stabilize her emotions quite a bit."  Id. at 354; see id. at 353, 361.  Dr. Gupta's treatment notes also indicate that, in 2009, plaintiff visited a child psychiatrist in Massachusetts, Dr. John Follet, M.D. ("Dr. Follet"), and indicated that, as of October 1, 2010, she was "very much improved, being talkative, communicative, honor roll student, happy."  See id. at 353, 356, 358, 360, 361.  In January 2017, plaintiff reported that plaintiff "ha[d] been treated with Prozac with good results," but that she reported that her then-prescribed dose of Prozac was "not working as effectively as it used to" and that she was "no longer see[ing] a psychiatrist."  Id. at 362.  Dr. Gupta also noted that plaintiff was being "home schooled in place of high school."  Id.  Dr. Gupta increased plaintiff's dose of Prozac.  See id.  In May 2017, plaintiff reported "[f]eel[ing] better on higher dose of Prozac.  Mood is more stable."  Id. at 357.

The record also contains office treatment records from Dr. John Follet, M.D. ("Dr. Follet"), which included a psychiatric evaluation taken in December of 2008 when plaintiff was 10 years old.  See T. at 407-13.  Based on his psychiatric evaluation, Dr. Follet diagnosed plaintiff with "Pervasive Developmental Disorder NOS[,]" "[r]uled out Asperger's disorder" and "ADHD" at that time.  Id. at 412; see id. at 413.  Dr. Follet concluded that plaintiff's "developmental disorder f[ell] somewhere along the line of an autistic spectrum disorder" and that plaintiff "has difficulties socially."  Id. at 413.  Dr. Follet's evaluation noted that plaintiff had a "history of development problems," including

"avoiding any social contact with other children" and that her "[a]ttempts to socialize [were] thwarted by the rejection of others[.]"  Id. at 411.

### 2. Educational Records

Plaintiff's educational records of evidence are from the 2008-2009 academic year indicate and that, "[w]hile [plaintiff] has social interactions with peers, she does not have friends outside of class" and that she "appeared to have an inability to ask peers to join in a game."  T. at 332.  These records list plaintiff's disability as autism, and added to plaintiff's schedule "bi-monthly psych consult for ½ hour 2 x per month."  See id. at 332, 333.

### V. Discussion[4]

### 1. The ALJ's RFC Determination

Plaintiff challenges the ALJ's RFC determination as unsupported by substantial evidence on the basis that the ALJ did not properly incorporate the non-exertional limitations expressed in Dr. Ochoa's and Dr. Cohen's opinions into her RFC determination.  See Dkt. No. 13 at 12-13.  In particular, plaintiff contends that the ALJ improperly substituted her own medical judgment and "split the difference" between the opinions of consultative medical examiners Dr. Schaich and Dr. Ochoa in reaching an RFC determination, which accounted for only "moderate" limitations in plaintiff's ability to interact with others and maintain a regular schedule and attendance at work.  See id.

---

4   The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

at 13.  Plaintiff also avers that the ALJ did not sufficiently articulate her reasoning for not accepting certain portions of Dr. Ochoa's opinion or the opinion of examining psychologist Dr. Cohen.  See id.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence.  See Dkt. No. 20 at 4.  In particular, the Commissioner avers that the ALJ properly considered the record as a whole, including the reports of the three examining physicians, in reaching her conclusion as to plaintiff's nonexertional limitations relating to her ability to interact and maintain a regular schedule and attendance at work.  See id. at 6-7.  Further, the Commissioner avers that the ALJ adequately explained her reasoning as to why she did not find Dr. Schaich's and Dr. Ochoa's opinions entirely persuasive concerning plaintiff's nonexertional limitations relating to her ability to interact and maintain a regular schedule and attendance at work.  See id. at 7-9.  Moreover, the Commissioner posits that the ALJ did not improperly split the difference between the two opinions as plaintiff suggests, but rather, that the ALJ properly resolved apparent conflicts between the two opinions in reaching her RFC determination based on her review of the entire record.  See id. at 9-10.  In addition, the Commissioner argues that the ALJ adequately explained her reasoning for finding Dr. Cohen's opinion only partially persuasive, which the Commissioner avers did not address plaintiff's nonexertional limitations relating to interacting and maintaining a regular schedule and attendance at work.  See id. at 12-13.

Residual Functional Capacity ("RFC") is defined as "'what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular

and continuing basis.'"  Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)

(quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted)).  "In making

a [RFC] determination, the ALJ must consider a claimant's physical abilities, mental

abilities, symptomology, including pain and other limitations which could interfere with

work activities on a regular and continuing basis."  Pardee, 631 F. Supp. 2d at 210

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations

created by an individual's response to demands of work . . . must be reflected in the

RFC assessment.'"  Hendrickson v. Astrue, 5:11-CV-927 (ESH), 2012 WL 7784156, at

*3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("S.S.R.") 85-15, 1985 WL

56857, at *6).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from

both examining and non-examining State agency medical consultants because these

consultants are qualified experts in the field of Social Security disability.  See Frey ex

rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of

a State agency medical consultant constitutes expert opinion evidence which can be

given weight if supported by medical evidence in the record."); Little v. Colvin, No. 5:14-

CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency

physicians are qualified as experts in the evaluation of medical issues in disability

claims.  As such, their opinions may constitute substantial evidence if they are

consistent with the record as a whole.") (internal quotation marks omitted and citations).

"An ALJ should consider all medical opinions received regarding the claimant."  Reider

v. Colvin, No. 15-CV-6517P (MWP), 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016)

(internal quotation marks and citation omitted)); see also SSR 96-8p, 1996 WL 374184,

at *5 (S.S.A. July 2, 1996) (explaining that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record."). However, "[a]n ALJ may not arbitrarily substitute his/her own judgment for competent medical opinion." Stacy D. v. Comm'r of Soc. Sec., 358 F. Supp. 3d 197, 205 (N.D.N.Y. 2019); see Charland v. Comm'r of Soc. Sec., No. 1:13-CV-492 (GTS/WBC), 2016 WL 1117515, at *2 (N.D.N.Y. Mar. 22, 2016) ("[A]n ALJ cannot assess a plaintiff's RFC based on the ALJ's own interpretation of the medical evidence."). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

In rendering her RFC determination, which assessed plaintiff's limitations as primarily non-exertional,[5] the ALJ explicitly examined and discussed the record evidence, including all opinion evidence of record, which consisted of the medical source statements of consultative examiners Dr. Schaich and Dr. Ochoa, and Dr. Cohen's ASD Evaluation Report, "found the opinions of both consultative examining sources somewhat persuasive" and "found that the opinion of . . . Dr. Cohen persuasive."[6] T. at 20. The ALJ set forth the exam findings and medical source statements of Dr. Schaich and Dr. Ochoa, who both noted that plaintiff was "cooperative" during her exams, used receptive language, and demonstrated a coherent, goal-oriented thought process. See id. at 415, 450. Such record evidence is

---

[5] Plaintiff does not challenge the ALJ's conclusion that her IBS, while a severe condition, did not "establish[] any exertional or other physical limitations." T. at 18.

[6] As the Commissioner points out, Dkt. No. 20 at 6 n. 3, although the ALJ referred to Dr. Cohen as a "treating source," T. at 20, Dr. Cohen is more appropriately described as an examining physician, as the extent of her treatment amounted to a single evaluation on September 5, 2018. See id. at 461. Plaintiff does not raise any argument concerning the ALJ's characterization of Dr. Cohen as a treating physician, and notes only that plaintiff visited Dr. Cohen once in September 2018 for "a neuropsychological evaluation." Dkt. No. 13 at 8.

sufficient to establish that, while limited, plaintiff retains some ability to interact with others; therefore, the ALJ's determination that plaintiff's ability to interact socially was moderately limited is supported by substantial evidence.  See Lovell v. Colvin, 137 F. Supp. 3d 347, 352 (W.D.N.Y. 2015) ("As to social functioning, the record supports the ALJ's finding that plaintiff had moderate difficulties.  As the ALJ noted, the . . . medical evidence in the record shows that plaintiff interacted appropriately with medical personnel during examinations.").

Next, the undersigned concludes that the ALJ's RFC analysis, including her assessment of the persuasiveness of each of the consultative examiners' opinions, is sufficiently specific and demonstrates that her RFC determination is supported by substantial evidence.  See Ferraris, 728 F.2d at 587.  In reaching her RFC determination, the ALJ concluded that Dr. Schaich's "opinion [wa]s well supported by the clinical findings and [wa]s fundamentally consistent with what [wa]s recounted in the treatment and examination records as well as the claimant's previous education records."  T. at 19.  Further, the ALJ made clear that she found that Dr. Ochoa's opinion was inconsistent with Dr. Schaich's opinion and other substantial evidence of record insofar as Dr. Ochoa opined that plaintiff had "'marked limitations' in sustaining an ordinary routine and regular attendance at work as well as . . . in her ability to interact adequately with coworkers and the public."  Id. (quoting id. at 452).  The ALJ noted plaintiff's hearing testimony in which she stated that her medication "basically has been [sic] functioning like a semi-normal human being, I think is pretty helpful" and makes her anxiety and depression "manageable."  Id. at 50; see id. at 17.  Indeed, Dr. Gupta's office visit notes establish that plaintiff's prescription of Prozac 30 mg "stabilize[s] her

emotions quite a bit."  T. at 354; see id. at 52.  The ALJ also pointed to plaintiff's

statements about her daily living activities, which the ALJ characterized as indicating

that including that plaintiff "is able to function around family members,  . . . occasionally

go shopping with her mother" and "occasionally wait online and handle some

transactions at the pharmacy or the deli counter, though she emphasized that she was

not good with money or other people."  Id. at 20.  For instance, when asked if she "had

to engage, say a deli manager for some cheese or meat could you converse with

someone where you're ordering something and get what, maybe your mother is asking

you to get?" plaintiff responded "I don't think so, no."  T. at 44.  However, when asked

whether plaintiff could "go into a pharmacy [to] pick something up or wait in line . . . by

[her]self" plaintiff stated "I probably could if I had to but . . . I'd rather not."  Id. at 45.

Plaintiff also denied attending family birthday or holiday parties or having friends, see id.

at 45, 416, but indicated that her "family relationships" were "good."  Id. at 451.

Moreover, the education records the ALJ considered, while outside the relevant time

period, corroborate that, "[w]hile [plaintiff] has social interactions with peers, she does

not have friends outside of class" and that she "appeared to have an inability to ask

peers to join in a game."  T. at 332.  The ALJ also found compelling Dr. Cohen's

conclusion that plaintiff's social struggles would present a challenge for plaintiff in

becoming independent and gaining and holding employment.  See id. at 20, 461-62.

The ALJ properly declined to afford weight to the portion of Dr. Cohen's

statements that plaintiff's limitations in socializing and/or interacting and depression

prevented plaintiff from holding full time employment and that plaintiff required financial

assistance until she was able to work full time independently, id. at 462, on the basis

that this analysis constituted "conclusory statements on an issue reserved for the Commissioner taking into account medical and vocational factors within the rubric of Social Security rules." Id. at 20; 20 C.F.R. §§ 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 416.927(d)(1) (same); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[S]ome kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner.") (internal quotation marks and citation omitted). However, the ALJ found persuasive the portion of Dr. Cohen's opinion in which she indicated that plaintiff should pursue a GED and stated that she believed that "would be a great candidate for college at some time in the near future." Id. at 20 (quoting id. at 462). The ALJ explained that, although these statements did "not directly address work-related limitations of function in specific vocational terms, . . . [they do] basically indicate that [Dr. Cohen] acknowledges that [plaintiff] has some significant retained capacity that would enable her to eventually function well enough in a college setting to earn a degree." Id. Therefore, the ALJ concluded that, "[t]aking all of this evidence into account, I find each of these opinions to be somewhat persuasive and they guide me in arriving at the conclusion that, with respect to social interaction, [plaintiff] would have a moderate though less than marked limitation when viewed in terms of the part B criteria definition." Id. Based on her review of the evidence, the ALJ reasoned that, although plaintiff would have "some significant restrictions" and that interacting with others was "the area where [she] has her greatest level of challenge," she "could work only in an environment that had no

interaction with the public and no interaction with coworkers, and . . . could not perform tandem tasks with coworkers."  Id.

In light of these findings, the ALJ rendered an RFC determination that limited plaintiff to performing work that required "no interaction with the public and no interaction with coworkers and could not perform tandem tasks with coworkers."  T. at 15.  Such limitations contained in the RFC adequately account for at least a moderate non-exertional limitation in the ability to socialize.  See Laughlan v. Comm'r of Soc. Sec., No. 17-CV-01055-A (RJA), 2019 WL 2723417, at *2 (W.D.N.Y. July 1, 2019) ("[O]ccasional contact with co-workers and supervisors is properly rated as a moderate limitation in social functioning.").  Even assuming, as plaintiff argues, that plaintiff's non-exertional limitation in her ability to socialize should have been rated as "marked," the ALJ's RFC determination would still be appropriate.  See Natrella v. Comm'r of Soc. Sec., No. 1:19-CV-01237 (SDA), 2020 WL 1041067, at *6 (S.D.N.Y. Mar. 3, 2020) (holding that the RFC, which limited the plaintiff "to only occasional interaction with supervisors, co-workers and the public" "reflect[ed] at least a moderate, if not greater, limitation in [the plaintiff's] ability to interact with others."); Juliana Marie M. v. Comm'r of Soc. Sec., No. 18-CV-01421 (ATB), 2019 WL 6829044, at *10 (N.D.N.Y. Dec. 13, 2019) (citing Fiducia v. Comm'r of Soc. Sec., No. 1:13-CV-285 (NAM), 2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) ("The fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work, particularly given the fact that the ALJ limited plaintiff to work that does not require more than occasional interaction with the public and co-workers.")).

The undersigned reaches the same conclusion with respect to the ALJ's RFC determination that plaintiff's ability to maintain a regular work schedule was moderately limited.   "The ability to maintain a regular schedule falls under the category of concentration and persistence."   Lowry v. Comm'r of Soc. Sec., No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1290685, at *4 (N.D.N.Y. Mar. 16, 2017) (citation omitted), report and recommendation adopted, No. 1:15-CV-1553 (GTS/WBC), 2017 WL 1291760 (N.D.N.Y. Apr. 6, 2017).  Here, ample record evidence supports the ALJ's conclusion that plaintiff was only moderately limited in her ability to concentrate and persist.  Both Dr. Schaich and Dr. Ochoa found plaintiff's attention and concentration to be "intact."  T. at 416, 451.  Further, plaintiff testified that she maintains a routine of spending approximately 10 to 12 hours per day on the internet and, although plaintiff stated that she gets tired and naps in the afternoons, she also acknowledged that she does not go to bed until 2:00 a.m. and that her medications do not cause any side effects.  See id. at 43, 47, 50.  Moreover, the record is devoid of evidence establishing that plaintiff had issues with attendance or persistence when in school, and Dr. Cohen opined that plaintiff was "a great candidate for college in the near future."  See id. at 462.  Dr. Cohen made this statement with full knowledge of plaintiff's diagnoses and lack of participation in treatment.  See id. at 461-62.

Concerning Dr. Ochoa's opinion that plaintiff had a marked limitation in her ability to maintain a regular schedule, the ALJ stated that, "with respect to [plaintiff's] ability to maintain regular attendance, provided that the type of low stress setting was available, I find that despite her impairments, [she] would not be prevented from sustaining a typical workday or work week."  T. at 21.  The ALJ emphasized that her conclusion concerning

plaintiff's "ability to sustain function" in this respect was premised on "a work setting which has [the] restrictions [contained in the RFC] in place." Id.  The ALJ explained that, "Dr. Ochoa's statement regarding [plaintiff's] ability to sustain activities would be rational . . . in a setting that involved things that would cause [her] stress such as frequent changes, frequent decision-making, or greater levels of social interaction." Id. However, the ALJ reasoned that "if [plaintiff] were otherwise in an environment that did not involve those circumstances . . . the record [and] examination findings or even [plaintiff's] reported daily activities [do not] support limitations that would prevent her ability to complete a typical workday or work week without significant interruptions in this type of low stress setting." Id.  Insofar as plaintiff alleges that the ALJ failed to explain her finding that plaintiff would not be as limited as described by Dr. Ochoa if she were limited to working under the given RFC determination, the undersigned concludes that the ALJ's foregoing explanation was sufficient.  As discussed in detail above, the ALJ acknowledged the differences in Dr. Schaich's and Dr. Ochoa's medical source statements insofar as they reached different conclusions as to the extent of plaintiff's limitations concerning her ability to maintain a regular schedule.  The ALJ explicitly set forth her reasoning that Dr. Ochoa's opinion that plaintiff's limitation in this area would be marked if not accommodated by the conditions set forth in the RFC—namely, that plaintiff was limited to simple, routine tasks in a low stress environment involving no more than occasional decision-making or change in work setting. See T. at 21.  Such explanation is sufficient under the Social Security Administration's rules. See Morales v. Berryhill, 484 F. Supp. 3d 130, 145 (S.D.N.Y. 2020) (concluding that the ALJ's RFC explanation was sufficient where "the ALJ acknowledged both the marked and

moderate-to-marked findings of [the plaintiff's treating psychologist] and explained that his marked limitations [we]re obviated or accommodated by the restrictions given in [the RFC] finding: limiting the claimant's interaction with others, limiting her to simple tasks consistent with unskilled work, and precluding stressful, fast-paced work.").

Moreover, courts in this circuit routinely hold that an RFC that limits a plaintiff to performing simple, repetitive work in a low stress environment with limited interaction with coworkers and the public is adequate to accommodate a plaintiff with moderate limitation in her ability to perform work within a schedule and maintain regular attendance.  See Andrea N. v. Saul, No. 3:18-CV-1186 (CFH), 2020 WL 1140512, at *5 (N.D.N.Y. Mar. 9, 2020 ("Courts have observed that there is significant case law indicating that the ALJ's limitation of [a p]laintiff to simple, routine tasks and working primarily alone, with only occasional supervision accounts for [his or] her limitations for performing activities within a schedule and maintaining regular attendance.") (additional brackets, internal quotation marks and citations omitted); Landers v. Colvin, No. 14-CV-1090S (WMS) , 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that [the p]laintiff is limited to 'simple, repetitive, and routine tasks' accounts for [the p]laintiff's [moderate] limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance.") (citations omitted).  Indeed, in Andrea N., this Court recently held that, "because the record evidence establishes that plaintiff has, at most, a moderate limitation in maintaining a regular work schedule and work-pace and the RFC specifically limits plaintiff to light work that involves only simple, routine tasks with minimal contact with coworkers, supervisors, or the public, the RFC adequately 'accounts for [the plaintiff's] limitations

for performing activities within a schedule and maintaining regular attendance." Andrea N., 2020 WL 1140512, at *6.

Based on the foregoing, the undersigned concludes that plaintiff's argument that the ALJ inappropriately "split the difference" between Dr. Schaich's and Dr. Ochoa's opinions and substituted her own medical judgement concerning plaintiff's non-exertional limitations in interacting and maintaining a regular schedule is unpersuasive. See Dkt. No. 13 at 13.  "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." Pellam v. Astrue, 508 F. App'x 87, 8990 (2d Cir.2013) (summary order).  Indeed, "'[i]n deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole,' even if that finding does not perfectly correspond with any of the opinions of cited medical sources." Tanya S. v. Saul, 410 F. Supp. 3d 436, 445 (N.D.N.Y. 2019) (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)); see Natashia R. v. Berryhill, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *10 (N.D.N.Y. Mar. 19, 2019) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion." (citing 20 C.F.R. § 416.946(c)).  The trier of fact has the duty to resolve that conflict.").  As discussed above, the ALJ considered all evidence of record and set forth detailed reasons as to why she did not find certain aspects of Dr. Ochoa's and Dr. Cohen's persuasive in reaching her RFC determination, which the Court concludes is supported by substantial evidence.

## 2. The ALJ's Step Five Determination

Plaintiff contends that the ALJ's step five determination is not based on substantial evidence.  See Dkt. No. 13 at 20.  In particular, plaintiff argues that the ALJ failed to reconcile conflicts between the vocational expert's ("VE") testimony, which plaintiff alleges led to the conclusion that plaintiff can perform jobs that do not conform with the ALJ's RFC determination.  See id. at 16-20.  Plaintiff avers that the jobs which the VE testified that she could perform—office helper, photocopying machine operator, and router—all require a reasoning level of two under the Dictionary of Occupational Titles ("DOT").  See id. at 17.  Plaintiff argues that these jobs exceed the ALJ's RFC determination that plaintiff can perform simple, repetitive jobs that require no more than one or two tasks, which plaintiff states limits her to performing only "reasoning level 1 jobs."  Id. at 18.  Plaintiff also argues that each of the foregoing jobs "undoubtedly involves more than '1 to 2 tasks.'"  Id. at 18 (quoting id. at 15).  Moreover, plaintiff posits that the ALJ failed to reconcile ambiguity in the VE's testimony concerning the extent to which plaintiff would be required to interact with coworkers in each of the above-referenced jobs, and what constitutes "tasks," thereby precluding meaningful review of the ALJ's determination.  Id. at 19.

The Commissioner argues that the ALJ's step five determination is supported by substantial evidence and that the ALJ did not fail to resolve ambiguity in the VE's testimony.  See Dkt. No. 20 at 14.  First, the Commissioner argues that, contrary to plaintiff's position, unskilled jobs requiring one or two tasks and only short and simple instructions do not conflict with jobs that require a reasoning level of two.  See id. at 15.  Further, the Commissioner contends that plaintiff cannot identify a conflict that the ALJ failed to resolve, and fails to "point to anything in the DOT descriptions of the three

positions that conflict with a limitation to not interacting with the public or co-workers."
Id. at 16.  Therefore, the Commissioner avers, plaintiff may not create an issue based
on "the colloquy between her counsel and the VE at the hearing" concerning
"interactions with co-workers."  Id. at 16; see id. at 17.

Plaintiff correctly notes that the positions of office helper, photocopying machine
operator, and router require a reasoning level two.  See DOT 239.567-010, 1991 WL
672232 (Office Helper); DOT 207.685-014, 1991 WL 671745 (Photocopying-Machine
Operator); DOT 222.587-038, 1991 WL 672123 (Router).  However, plaintiff's argument
that jobs requiring a reasoning level of two exceed the ALJ's RFC determination that
plaintiff can perform simple, repetitive jobs that require no more than one or two tasks
lacks merit, as "courts have routinely held that a[] RFC determination limiting a plaintiff
to simple and routine tasks means that a plaintiff is capable of working at reasoning
development level two."  Patterson v. Colvin, No. 14-CV-6224P (MWP), 2015 WL
5036934, at *16 (W.D.N.Y. Aug. 26, 2015) (internal quotation marks and citation
omitted); McCusker v. Comm'r of Soc. Sec., No. 1:13-CV-1074 (GLS), 2014 WL
6610025, at *4 (N.D.N.Y. Nov. 20, 2014) ("[A] number of courts have held that jobs with
DOT reasoning levels of two or three are compatible with limitations to simple and low
stress work."); Carrigan v. Astrue, No. 2:10-CV-303, 2011 WL 4372651 (JMC/WKS), at
*11 (D. Vt. Aug. 26, 2011) ("The weight of the authority compels a conclusion that,
generally, someone . . . who is able to perform simple, repetitive tasks, is capable of
performing Reasoning Level 2 jobs."), report and recommendation adopted, No. 2:10-
CV-303, 2011 WL 4372494 (JMC/WKS) (D. Vt. Sept. 19, 2011); Edwards v. Astrue, No.
5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *15 (N.D.N.Y. Sept. 16, 2010)

("Working at reasoning level 2 does not contradict a mandate that work be simple, routine and repetitive.").   Insofar as plaintiff challenges the VE's testimony on the basis that the hypotheticals used were based on a flawed RFC assessment, this argument lacks merit, as the undersigned has already concluded that the ALJ's RFC determination is supported by substantial evidence.  See Wavercak v. Astrue, 420 F. App'x 91, 94-95 (2d Cir. 2011) (summary order) ("[The plaintiff] contends that the ALJ erred in relying on the testimony of a vocational expert because the expert's opinion was based on a flawed assessment of [his] RFC.  Because [the court has] already concluded that substantial record evidence supports the RFC finding, we necessarily reject [the plainitff's] vocational expert challenge.").

Moreover, plaintiff's argument that the ALJ failed to resolve an alleged ambiguity in the VE's testimony concerning how "tasks" and "contact" were defined are of no moment.  When an ALJ uses a VE, the ALJ "must present the VE with a set of hypothetical facts to determine whether plaintiff retains the capacity to perform any specific job." Gill v. Astrue, No. 1:10-CV-985 (MAD/ATB), 2011 WL 4352410, at *7 (N.D.N.Y. Sept. 15, 2011) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1981)), report and recommendation adopted, No. 1:10-CV-985 (MAD/ATB), 2011 WL 4352719 (N.D.N.Y. Sept. 15, 2011).  An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved[.]" Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) (internal quotation marks and citations omitted).  Where a conflict exists between a vocational expert's testimony and the Dictionary of Occupational Titles

("DOT"), the ALJ is obligated to identify and resolve such conflict, which requires the ALJ to "'obtain a reasonable explanation' for any . . . conflict between the [DOT] and a vocational expert's testimony." Lockwood v. Comm'r of Soc. Sec. Admin., 914 F.3d 87, 92 (2d Cir. 2019) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000)). "Vocational expert testimony and the DOT conflict where they disagree in categorizing or describing the requirements of a job as it is performed in the national economy." Patricia K. v. Comm'r of Soc. Sec., No. 5:20-CV-37 (ATB), 2020 WL 7490323, at *17 (N.D.N.Y. Dec. 21, 2020) (internal quotation marks and citations omitted).

Here, to the extent that plaintiff avers that the VE's testimony that plaintiff could perform the position of office helper establishes a departure from the RFC limitation that plaintiff is able to perform jobs that involve only one or two tasks, her argument is unpersuasive. The DOT definition of Office Helper indicates that a person employed in this role

> Performs <u>any combination</u> of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663-010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock certificates and bonds within and between stock brokerage offices and be designated Runner (financial).

1991 WL 672232 (emphasis added).  Thus, although this job contemplates that an individual must be able to perform "any combination" of a list of duties, it does not indicate that a person performing the job of office helper would be required to engage in more than two tasks.  See DOT 239.567-010, 1991 WL 672232 (Office Helper).  Indeed, plaintiff does not cite to any authority in support of her position that "it was blatantly erroneous for the ALJ to find [p]laintiff capable of performing" the job of office helper based on her RFC, and her conclusory assertions fail to demonstrate error.  Dkt. No. 11 at 18.

Moreover, the VE's testimony did not create any unresolved ambiguities as to how the term "task" was defined at the hearing.  Plaintiff's counsel asked the VE whether, in performing the job of office helper, an "individual is never going to perform more than one to two repetitive tasks throughout the day?  There wouldn't be more than two tasks that they could perform?"  T. at 67.  The ALJ intervened, stating "[c]ounsel, I'm using that term in the technical meaning.  I don't know how you're using it[,] but I am using it technically as it's defined by the US Department of Labor."  Id.  Plaintiff's counsel then asked the VE, "you're saying that there's no more than two tasks for an office helper as that's defined, correct?"  Id. at 68.  In response, the VE testified, "Jobs, . . . simple routine jobs with one or two to two tasks and that's, again anything the person has to do doesn't have any more than one to two tasks and tasks are broken down even farther by what the SCO described as elements, got them even smaller fraction of what a job is broken down into."  Id.  Plaintiff neither addresses the ALJ's and VE's definition of "tasks" nor proffers any alternative meaning for that term under the regulations.  See Dkt. No. 11 at 19-20; see Lisa M. v. Comm'r of Soc. Sec., No. 20-CV-

0178MWP, 2021 WL 3513832, at *4 (W.D.N.Y. Aug. 10, 2021) ("[It] is [not] the Court's job to mine the record to uncover factual support for [the] plaintiff's contentions where the plaintiff has cited none.").  Indeed, plaintiff's contention that the VE "created more confusion when it became apparent that she, the ALJ, and [p]laintiff's attorney may have been using the terms "elements," "jobs," and "tasks" interchangeably" is belied by the text of the hearing exchange, which demonstrates that the ALJ and VE explicitly differentiated between the terms "jobs," "tasks," and "elements."  Id. at 19.

Similarly, to the extent that plaintiff argues that these jobs require more interaction with coworkers than the RFC permits, her arguments are belied by the DOT definitions for those jobs.  The positions of office helper and photocopying machine operator require only a level 6 for social interaction, while the job of router requires a level 8, and all of these positions are rated "N" indicating that the degree of relation to people is "Not Significant."  DOT 239.567-010, 1991 WL 672232 (1991) (Office Helper); DOT 207.685-014, 1991 WL 671745 (1991) (Photocopying-Machine Operator); DOT 222.587-038, 1991 WL 672123 (1991) (Router).  Level 8 interactions require: "Taking Instructions—Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed). Helping applies to 'non-learning' helpers."  DOT, Appendix B, 1991 WL 688701 (1991).  Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction.  See Lisa M., 2021 WL 3513832, at *4 ("Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors."); see also Alie v. Berryhill, 4:16-CV-1352 (JMB), 2017 WL 2572287, *16 (E.D. Mo. 2017) ("Level 8

30

interaction is compatible with a RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public"). Indeed, plaintiff does not challenge the level of social interaction for any position other than that of office helper—which, as stated, requires a degree of social interaction of 6. See DOT 239.567-010, 1991 WL 672232 (1991) (Office Helper).

Further, the VE's testimony did not create any unresolved ambiguity as to the level of interaction required for the job of office helper. At the hearing, the VE testified,

> I'm using the typical definition of interaction meaning more than just a quick passing off of work or saying hello that it involves conversation and cooperation and more you time spent with that co-worker that's how I'm understanding the interaction so in that case those jobs that I provided in hypothetical one would still apply.

T. at 66 (emphasis added). Plaintiff's counsel asked the VE, "it sounds to me like your answer indicated that there would still be some superficial interaction. Am I correct?"

Id. The VE replied,

> Well the [ALJs] have been using a very definite definition of what interaction means so that's what I'm using. I would say it would be no. It might be contact and that would be like saying hello, passing something off to them very superficial but it's when they use the word interaction it is, the way I'm understanding most of the [ALJs], how they use it, if that's not the case we can ask the [ALJ] if it's different but that's how I'm understanding it."

Id. The VE further testified that

> In [the job of office helper] if you read the DOT description of it the person is working primarily[] by themselves doing very, very simple office tasks. They don't interact with the public in that job and they would have very little reason to interact at all with co-workers. They might have some superficial contact by passing lots [sic], maybe they made some photo[]copies and laid them on the persons [sic] desk but there's no reason for them to have interaction.

31

Id. at 67.  Plaintiff argues, "this contentious exchange demonstrates the level of ambiguity present following the VE's testimony."  Dkt. No. 11 at 19.  The undersigned does not agree.  The vocational expert, in response to plaintiff's counsel's inquiry, defined "interaction" as "the typical definition of interaction" which she explained to mean "more than just a quick passing off of work or saying hello that it involves conversation and cooperation and more you time spent with that co-worker" and more than "superficial" contact.  T. at 66.  The undersigned concludes that the vocational expert's definition of "interaction" amounts only to common usage of that term and, when considered together with the vocational expert's testimony concerning the DOT description of office helper, the foregoing exchange does not present any conflict or ambiguity on this point.  Id. at 66, 67; see Campagna v. Barnhart, No. 3:05-CV-517 (DJS), 2007 WL 1020743, at *10 (D. Conn. Apr. 3, 2007) ("While plaintiff faults the ALJ for not 'defining' for the record what he meant by 'low stress' and 'supervised' these are terms that are used every day, and the vocational expert appears to have understood them.").  Moreover, as with her challenge to the VE's and ALJ's use of the term "tasks," plaintiff fails to proffer any alternative definition of the term "interaction" or submit any evidence to establish that the VE's definition was erroneous.  Thus, the undersigned concludes that no conflict exists between the VE's job descriptions and their DOT definitions, and that no unresolved ambiguity resulted from the VE's testimony on this point.

## VI. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 13) is **DENIED** and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 22, 2021
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge